**Charles Aaron SANDS, petitioner, Respondent,**

v.

**COMMISSIONER OF PUBLIC SAFETY, Appellant.**

No. A07–0059.

Court of Appeals of Minnesota.

Jan. 29, 2008.

Rory Patrick Durkin, Giancola Law Office, Anoka, MN, for respondent.

Lori Swanson, Attorney General, Kyle R. Gustafson, Assistant Attorney General, St. Paul, MN, for appellant.

Considered and decided by HALBROOKS, Presiding Judge; STONEBURNER, Judge; and MINGE, Judge.

## OPINION

HALBROOKS, Judge.

The Commissioner of Public Safety challenges the district court's ruling that a peace officer is required to certify under Minn.Stat. § 169A.52, subd. 4(a) (2006), that a suspected impaired driver's alcohol concentration was .20 or more before the commissioner can revoke the motorist's driver's license for more than 90 days. Because we conclude that the district court erred in its interpretation of the statute, we reverse.

## FACTS

On October 3, 2006, Officer Boyer of the Annandale Police Department arrested respondent Charles Sands on suspicion of driving while impaired. Pursuant to the implied-consent law, Minn.Stat. § 169A.51 (2006), Officer Boyer read respondent the implied-consent advisory and requested that he submit to a breath test. Respondent agreed to take the Intoxilyzer 5000 breath test, and the resultant breath sample indicated that his alcohol concentration was .24, three times the legal limit.

After processing respondent's arrest, Officer Boyer filled out several forms, including the Implied Consent Law Peace Officer's Certificate. This form asks an arresting officer to certify to the Commissioner of Public Safety certain facts re-

garding a motorist's arrest based on the suspicion that the motorist was driving while impaired. These facts include the motorist's identifying information, the basic facts providing probable cause to believe that the motorist was driving while impaired, and the results of the officer's request that the motorist submit to a test for the presence of alcohol or controlled substances. In the relevant section of the form, Officer Boyer checked the box to certify that respondent had taken a test and that the results "indicated an alcohol concentration of .08 or more." The only other alternatives provided in this section of the form allow an officer to check a box that certifies that the motorist refused to provide a test sample or a box that certifies that a sample of the motorist's blood or urine indicated the presence of certain controlled substances. There is no box to certify an alcohol concentration of .20 or more.

Once this certification form is completed, it is forwarded to the commissioner, along with a copy of the alcohol-influence report, the arrest report, the Intoxilyzer records, and any laboratory reports. In this case, Officer Boyer sent to the commissioner the Intoxilyzer test record, indicating respondent's breath sample of .24, the completed implied-consent advisory, his police report, and an Intoxication field report documenting respondent's condition upon arrest. The commissioner subsequently revoked respondent's driver's license for 180 days pursuant to Minn.Stat. § 169A.52, subd. 4(a)(4) (2006).

Respondent petitioned for judicial review, asking the district court to reinstate his driver's license and to rescind the commissioner's revocation. The district court granted respondent's motion in part and denied it in part. The district court found that the commissioner had sustained its burden to uphold the 90–day revocation under Minn.Stat. § 169A.52, subd. 4(a)(1), but failed to sustain its burden to uphold a 180–day revocation under Minn.Stat. § 169A.52, subd. 4(a)(4). The district court therefore rescinded the revocation beyond 90 days. This appeal follows.

## ISSUE

Does Minn.Stat. § 169A.52, subd. 4(a) (2006), require a peace officer to certify to the Commissioner of Public Safety that a motorist's alcohol concentration was .20 or more to allow revocation of a motorist's driver's license for more than 90 days?

## ANALYSIS

■ The district court found Minn.Stat. § 169A.52, subd. 4(a)(4) (2006), to be ambiguous, stating that "[a] reasonable reading of Minn.Stat. § 169A.[52], subd. 4(a)(4) could lead some to believe that the legislature required a specific certification for a[n] [alcohol concentration] over 0.20 for the increased penalties to take effect. Another reasonable reading could lead some to believe the legislature did not have this intent."

■ Statutory interpretation is a question of law, which we review de novo. *See State v. Stewart*, 624 N.W.2d 585, 588 (Minn.2001). The goal of statutory interpretation is to effectuate the intent of the legislature. Minn.Stat. § 645.16 (2006). A statute's "words and phrases are construed according to the rules of grammar" and their plain and common meaning unless they embody some special meaning. Minn.Stat. § 645.08 (2006).

The Minnesota Supreme Court has "repeatedly recognized that laws prohibiting a person from driving a motor vehicle while intoxicated are remedial statutes. Consequently, such laws are liberally interpreted in favor of the public interest and against the private interest of the drivers involved." *State v. Hanson*, 543 N.W.2d 84,

89 (Minn.1996) (quotation omitted). This court has further stated:

> The right of the public to be free from the unwarranted dangers posed by drinking drivers far outweighs any interest any individual may have in the continued unrestricted operation of motor vehicles. This public interest mandates a nonrestrictive application of [implied consent statutes] to give effect to the clear legislative intent to have the statute[s] made as effective a remedy as possible for the removal of drinking drivers from our streets and highways.

*Szczech v. Comm'r of Pub. Safety*, 343 N.W.2d 305, 307 (Minn.App.1984). With these principles in mind, we turn to the text of the statute.

The relevant portion of Minn.Stat. § 169A.52, subd. 4(a), states:

> Upon certification by the peace officer that there existed probable cause to believe the person had been driving, operating, or in physical control of a motor vehicle in violation of section 169A.20 (driving while impaired) and that the person submitted to a test and the test results indicate an alcohol concentration of 0.08 or more or the presence of a controlled substance . . ., then the commissioner shall revoke the person's license or permit to drive, or nonresident operating privilege:
>
>> (1) for a period of 90 days;
>>
>> (2) if the person is under the age of 21 years, for a period of six months;
>>
>> (3) for a person with a qualified prior impaired driving incident within the past ten years, for a period of 180 days; or
>>
>> (4) if the test results indicate an alcohol concentration of 0.20 or more, for twice the applicable period in clauses (1) to (3).

Respondent contends that this statutory language is ambiguous and that the dis-

trict court properly interpreted it to require an officer to certify that a motorist's alcohol concentration was .20 or more before the commissioner can revoke the person's license to drive for more than 90 days. The commissioner asserts that the statute's language is plain and does not require such certification. We agree.

A statute is ambiguous only if it is subject to more than one plausible interpretation. *Harrison ex rel. Harrison v. Harrison*, 733 N.W.2d 451, 453 (Minn. 2007). Minn.Stat. § 169A.52, subd. 4(a), is a two-part statute. The first part addresses what a peace officer must do to enable the commissioner to revoke a person's license to drive, while the second part lists the commissioner's *revocation options and the bases for each option.* The statute begins with a dependent clause, requiring a peace officer to certify only that: (1) there was probable cause to believe the motorist was driving while impaired and (2) that a test indicated the motorist's alcohol concentration was .08 or more or that certain enumerated controlled substances were present in the motorist's body. Minn. Stat. § 169A.52, subd. 4(a). A comma separates *this dependent clause from the remainder of the statute. Id.* The comma is immediately followed by the word "then," and this word is in turn followed by alternative durations of revocation that the commissioner must apply in revoking the motorist's license. *Id.* In other words, if the officer certifies the two facts required by the first part of the statute, the commissioner's revocation options are listed in the second part of the statute.

Respondent correctly notes that revocation of a person's license to drive for more than 90 days is permitted under the statute only if it is found that the accused is less than 21 years of age, has prior qualified driving-while-impaired offenses, or had an alcohol concentration

28

above .20. Minn.Stat. § 169A.52, subd. 4(a)(2)-(4). But it is the commissioner who independently makes these additional factual determinations. Thus, because the "legislature's intent is clear from plain and unambiguous statutory language, this court does not engage in any further construction" of that language. *State v. Bluhm,* 676 N.W.2d 649, 651 (Minn.2004) (quotation omitted). We therefore conclude that the district court erred in its determination that Minn.Stat. § 169A.52, subd. 4(a), requires an officer to certify to the commissioner that a motorist's alcohol concentration was .20 or more to properly revoke the motorist's license for more than 90 days.

## DECISION

Minn.Stat. § 169A.52, subd. 4(a) (2006), requires a peace officer to certify to the commissioner that there was probable cause to believe a motorist was driving while impaired and that the motorist's test result indicated an alcohol concentration of .08 or more. Because Officer Boyer properly certified both of these facts, the commissioner's revocation of respondent's driver's license for 180 days based on its additional finding that respondent's alcohol concentration was .20 or more is proper.

**Reversed.**